The Law Offices of Jacob Aronauer
225 Broadway, 3rd Floor
New York, New York 10007
(212) 323-6980
jaronauer@aronauerlaw.com

July 21, 2020

**Via ECF**
Honorable Michael Hammer
Martin Luther King Building & U.S. Courthouse
50 Walnut St, #4015
Newark, NJ 07102

      Re:   *Oviedo et al. v. Village Auto Wash LLC et al.*
           18-cv-17414 (ES) (MAH)

Dear Judge Hammer

    This letter constitutes Plaintiff's response to Defendants application to enforce the settlement agreement. For the reasons set forth, Defendants' application should be denied.

    First, as acknowledged by Defendants, they made an effort to prevent this matter from being timely settled. Specifically, Defendants' counsel himself acknowledges that he took weeks to provide a proposed settlement agreement. *See* pg. 4-5 of Defendants' motion to enforce the agreement. Then after the parties began to negotiate the terms of the agreement, Defendants took another 3 weeks to respond to providing edits. *See* pg. 8 of Defendants' memorandum of law to enforce the settlement agreement. The failure of Defendants to timely work with Plaintiff's counsel to settle the case created unnecessary strain between the parties which led to the agreement falling apart. Indeed, as noted by Defendants' counsel, Plaintiff's counsel warned Defendants' counsel that his gamesmanship was going to lead to the settlement agreement falling apart. *See* pg. 11 of Defendants' MOL.

    Second, the position of Defendants that Plaintiff sought more money is false. I fear that Defendants were going to attempt to argue that due to a breach of a confidentiality agreement they would not have to pay the full amount of the monies. We would agree to a confidentiality provision without a set monetary penalty.

    Third, at no point did this office inform Defendants' counsel that a deal could be reached without all terms being agreed upon. Quite the contrary, the parties had to agree on all terms and, in addition, it was clear between the parties that the parties had to formally execute the settlement agreement in order for the agreement to be enforceable. Annexed as Exhibit A is Tuesday, December 3, 2019 e-mail from Mr. Jamison which states in relevant part: "This version is agreeable to my client. *If* your client *accepts, kindly execute* and return with the proper documents so that I can then have *my client sign* and send you check." (emphasis added).

A settlement agreement becomes an enforceable contract when the parties agree upon and manifest their intent to be bound by all the essential terms of the proposed contract." *Am. Bridal & Prom Indus. Ass'n v. Affordablebridaldress.com*, 2015 U.S. Dist. LEXIS 122393, at * 4-5 (N.J. Sept. 15, 2015) (string cite omitted).  The fact that here the agreement had a provision stating that it could be executed in counterparts and and it had a blank portion for the parties to sign indicates that that it did not intend for the contract to be enforceable until it was executed by both parties.  Id.  In *Leodori v. CIGNA Corp.*, 175 N.J. 293, 305 (2003), the New Jersey Supreme Court noted that when a party makes clear that the agreement needs to be signed in order to be enforced, a settlement cannot be reached (however, "when one party…presents a contract for signature to another party, the omission of that other party's signature is a significant factor in determining whether the two parties mutually have reached an agreement." *Leodori* went on to note that "when defendants' own documents contemplated plaintiff's signature on an agreement and then successfully to assert that the omission of that signature is irrelevant ot the agreement's validity.  Id. at 306; *see also PSEG Engery Res. & Trade LLC v. Onyx Reneweable Partners, L.P.*, 2017 N.J Super. Unpubl. LEXIS 524 at * 26 (finding no agreement was reached because it was undisputed that the parties had contemplated the execution of the agreement).  This matter mirrors the above cited cases.  The parties clearly understood that all terms had to be met in order for an agreement to be reached and, in addition, the parties had to formally execute the agreement.  That was why the settlement agreement had signature pages.

Fourth, Defendants' counsel himself at various times has acknowledged himself the case has not settled.  The parties had a subsequent settlement conference with Magistrate Hammer where Defendants provided a new settlement proposal.  After the settlement conference concluded, Defendants provided a new offer to Plaintiffs.  A copy of Defendants' latest settlement proposal is annexed as Exhibit B.  If Defendants truly believed that a binding settlement agreement had been reached, they revoked it by making amended offers.

Defendants cite to *Lahue v. Pio Costa*, 263 N.J. Super. 575, 623 A.2d 75 (N.J. Super. Ct. App. Div. 1993) and *Bistricer v. Bistricer*, 231 N.J. Super. 143, (N.J. Super. Ct. App. Div. 1987) for the proposition that that it is reasonable to enforce a settlement agreement reached in principle even if the agreement is not fully executed.  Both of these matters involved complicated contentious family disputes that are analogous to the facts herein.

## CONCLUSION

For the reasons set forth Defendants' motion to enforce the settlement agreement should be denied.

Respectfully submitted,

*/s/ Jacob Aronauer*
Jacob Aronauer
*Attorney for Plaintiff*

cc: **Via ECF**
     *All attorneys on record*

# EXHIBIT A

 Gmail

Jacob Aronauer <jaronauer@aronauerlaw.com>

---

## Oviedo v. VAW

8 messages

---

**Jamison Mark** <jmark@newjerseyattorneys.com>                Tue, Dec 3, 2019 at 12:55 PM
To: Jacob Aronauer <jaronauer@aronauerlaw.com>

Jacob,


Attached is the agreed upon release agreement.   I have made two changes to the agreement, paragraph 5(i) and paragraph 6.  You will see those changes have been redlined.

This version is agreeable to my client.  If your client accepts, kindly execute and return with the proper documents so that I can then have my client sign and send you checks.


Jamison


***PLEASE NOTE OUR NEW ADDRESS AND PHONE NUMBER BELOW****


*Jamison M. Mark, Esq.*

### THE MARK LAW FIRM, LLC

675 Morris Avenue, Suite 102

Springfield, New Jersey 07081
T: 973.845.6606 (Springfield)

T: 908-626-1001 (Basking Ridge)

www.NewJerseyAttorneys.com





Subscribe to our Mark Law Firm Instagram, Twitter, Youtube, LinkedIn and Facebook pages.

## NEGOTIATED SETTLEMENT AGREEMENT
## AND GENERAL RELEASE

1.     The parties to this Negotiated Settlement Agreement and General Release (the "Agreement") are DEIVID DARIO VELEZ OVIEDO (hereinafter "OVIEDO" or "Plaintiff") and VILLAGE AUTO WASH LIMITED LIABILITY COMPANY d/b/a VILLAGE AUTO WASH, and ALEXANDER RODRIGUEZ, *improperly pled as Alex Rodriguez* (hereinafter "Defendants").[1] The Agreement is the product of negotiation and compromise between Plaintiff and these Defendants.

2.     Plaintiff and Defendants have chosen to enter into this Agreement in order to avoid further proceedings with respect to certain claims Plaintiff has made against Defendants and claims that Defendants have made against Plaintiff. Plaintiff and Defendants understand and agree that Defendants deny every allegation of wrongdoing made by Plaintiff in the above-captioned matter currently pending in the United States District Court for the District of New Jersey, Civil Action No. 18-cv-17414 (the "Litigation"), including but not limited to Plaintiff's claims of failure to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"); failure to pay overtime in violation of the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56a, *et seq.* (the "NJWHL"); and (3) failure to timely pay wages in violation of the New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.1, *et seq.* (the "NJWPL").

3.     In addition, Defendants agree to waive all counter claims made against Plaintiff in the Litigation.

---

[1] Although not identified as a party to the Agreement, all prior employees of Village Auto Wash LLC are an express beneficiary of the Agreement and General Release and a "Released Party" as defined herein.

4.      Plaintiff and Defendants understand and agree that the making of this Agreement shall not, in any way, be construed or considered an admission by Defendants of guilt, liability or non-compliance with any federal, state or local law or of any other wrongdoing whatsoever.

5.      In exchange for the promises made by Defendants herein, Plaintiff, and Plaintiff's heirs, executors, administrators, fiduciaries, successors and/or assigns:

a.      Agree to the dismissal, with prejudice and without an award of costs or attorneys' fees, of the complaint filed in the Litigation; and

b.      Unconditionally and irrevocably give up and release, to the full extent permitted by law, Defendants, Defendants' past, present and future direct or indirect parent organizations, subsidiaries, divisions, affiliated entities, and its and their partners, including Alexander Rodriguez, all officers, directors, trustees, administrators, fiduciaries, employment benefit plans and/or pension plans or funds, executors, attorneys, employees, insurers, reinsurers and/or agents and their successors and assigns individually and in their official capacities (collectively referred to herein as "Released Parties" or "Released Party"), jointly and severally, of and from all claims, known or unknown, that Plaintiff has or may have against Released Parties of the date of execution of this Agreement including, but not limited to, those claims set forth in the Litigation, or otherwise arising out of Plaintiff's employment or termination of employment, or any alleged violation of:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA") (as modified below);
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;

2

- The Family and Medical Leave Act;
- The Equal Pay Act;
- The Genetic Information Nondiscrimination Act of 2008;
- The Fair Labor Standards Act ("FLSA");
- The New Jersey Wage and Hour Law ("NJWAL");
- The New Jersey Wage Payment Act ("NJWPA");
- The New Jersey Law Against Discrimination;
- The New Jersey Civil Rights Act;
- The New Jersey Family Leave Act;
- The New Jersey State Wage and Hour Law;
- The Millville Dallas Airmotive Plant Job Loss Notification Act;
- The New Jersey Conscientious Employee Protection Act;
- The New Jersey Equal Pay Law;
- The New Jersey Occupational Safety and Health Law;
- The New Jersey Smokers' Rights Law;
- The New Jersey Genetic Privacy Act;
- The New Jersey Fair Credit Reporting Act;
- The New Jersey Paid Sick Leave Act;
- The New Jersey Statutory Provision Regarding Retaliation/Discrimination for Filing A Workers' Compensation Claim;
- The New Jersey Public Employees' Occupational Safety and Health Act;
- New Jersey laws regarding Political Activities of Employees, Lie Detector Tests, Jury Duty, Employment Protection, and Discrimination;
- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

Plaintiff understands this Release includes all claims related in any manner to Plaintiff's employment, the cessation of that employment, wages, payments, and/or overtime payments. Plaintiff further understands that he is hereby releasing any known or unknown claim for or alleged right to discovery of information or documents of Released Parties.

Defendants understand that this Release includes all claims related in any manner to Plaintiff's employment, the cessation of that employment, wages, payments, and/or overtime payments and purported overpayment of wages. Defendants further understand that they are hereby releasing any known or unknown claim for or alleged right to discovery of information or documents of Released Parties.

3

If any claim is not subject to release, to the extent permitted by law, Plaintiff waives any rights or abilities to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Defendants or any Released Party identified in this Agreement is a party.

c.      Plaintiff affirms that he is not a party to, and that he has not filed or caused to be filed, any claim, complaint, or action against Released Parties in any forum or form, except this Litigation, and if he has, he will immediately release, dismiss and cause to be withdrawn any such claim.

d.      Plaintiff affirms that, upon payment of the amounts set forth herein, he has been paid and/or has received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which he may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions and/or benefits are due to Plaintiff, except as provided in this Agreement.

e.      Plaintiff affirms that he has no known workplace injuries or occupational diseases and has been provided and/or has not been denied any leave requested under the Family and Medical Leave Act and/or the New Jersey Family Leave Act.

f.      Plaintiff acknowledges that because of circumstances unique to him, including but not limited to, irreconcilable differences with Released Parties, Plaintiff agrees not to seek employment with Released Parties in the future.

4

g.       Plaintiff affirms he has not complained of and is not aware of any fraudulent activity or any act(s) which would form the basis of a claim of fraudulent or illegal activity of Defendants.

h.       Plaintiff affirms that he has not asserted, claimed or complained (formally or informally, internally or to an agency, court or other government entity or individual) of discrimination, retaliation, harassment or any other alleged violation of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, *et seq.* (the "LAD"). Although Plaintiff releases any and all claims under the LAD through this Agreement, he has not asserted any such claims to Released Parties or to any other individual, agency, court, or other government entity or individual.

i.       *Although the Parties to this Agreement will not seek formal approval of the Agreement by the Court, Plaintiff understands and acknowledges that he is releasing any and all claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (the "FLSA"), including claims of retaliation under said Act (29 U.S.C. § 215(a)(3)) and pursuant to the N.J. Wage & Hour Act. Plaintiff agrees that, to the extent Released Parties deem necessary, Plaintiff will execute any and all documents required to effect the dismissal and release of all claims under the FLSA including, if necessary, submission to the Department of Labor or a court of competent jurisdiction to approve the release, without any further consideration to Plaintiff beyond what is provided for in this Agreement.*

j.       Plaintiff affirms that all of Defendants' decisions regarding Plaintiff's pay and benefits through the date of his separation of employment were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

5

6.    To the extent permitted by law, and subject to the subsection of this Section, Plaintiff agrees not to disclose, either directly or indirectly, any information whatsoever relating to the existence or substance of the Agreement, this Litigation, the business of Defendants, Plaintiff's employment with Defendants, or any current or former employees of Defendants to any person or entity, including, but not limited to, members of the media, present or former employees of Defendant and/or attorneys or private investigators representing other employees or entities relating to the settlement of this FLSA and Wage and Hour matter. Plaintiff, however, may disclose the terms of the Agreement to: (i) Plaintiff's accountant, counsel or spouse with whom he chooses to consult or seek advice regarding his consideration of the decision to execute the Agreement, provided, however, that those to whom Plaintiff makes such disclosure agree to keep such information confidential and not disclose it to others; or (ii) if required to do so by any regulatory body or agency. Upon inquiry regarding this proceeding, Plaintiff shall either not respond or state only that it has been resolved. Nothing herein shall be read to preclude Plaintiff from discussing his dates of employment with Defendants, job duties, job titles and salary history with prospective employers.

a.    Nothing in this Agreement prohibits or prevents Plaintiff from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, Plaintiff's rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Plaintiff

6

**Deleted:** <#>*Pursuant to S-121 and NJSA 10:5-12:* Nothing in this agreement prohibits Plaintiff from disclosing any facts relevant to any claims of discrimination in violation of the NJLAD and any and all statutes, however, should Plaintiff disclose such terms so that Defendants are reasonably identifiable, Defendants shall also be permitted to disclose information relevant to Plaintiff's discrimination claims in response. Nothing herein shall permit Plaintiff to disclose any of the terms or financial amounts relating to the financial terms of this settlement.¶

agrees that if such an administrative claim is made, Plaintiff shall not be entitled to recover any individual monetary relief or other individual remedies.

b.  Plaintiff realizes that any breach of this provision, and disclosure to any 3rd party would cause Defendants injury and damages, much which is not quantifiable at this time, and as such Plaintiff agrees that he shall return $7,500 in payment to Defendants as liquidated damages, and shall reimburse Defendants for all reasonable attorneys' fees and costs incurred by Defendants in seeking a court order to enforce this Agreement and stop any violations of this provision and/or to seek damages for any prior, ongoing or future violation of this provision.

c.  At the date of signing this agreement, Defendants have no reason to believe that Plaintiff has breached the terms of this agreement.  If Defendants believe later on that that Plaintiff has breached the terms of the settlement agreement, that will not serve as a basis to withhold the settlement monies.

d.  In the event Plaintiff or his counsel believe they are compelled either to provide or disclose information described in this paragraph, they will provide written notice of such belief, via email and certified mail to Defendants' attorney, Jamison M. Mark, Esq. 675 Morris Ave., Suite 102, Springfield New Jersey 07081 (jmark@newjerseyattorneys.com) no later than five (5) Calendar days prior to said production or disclosure.

e.  This Agreement may only become public in an action to enforce or for breach of this Agreement, and then shall be filed under seal with the Court.

7

7.      Plaintiff and Defendants agree and covenant that they will not at any time make, publish, or communicate to any person or entity, in any form, manner or forum (including any social media forum), any disparaging remarks, comments or statements concerning each other, which includes the settlement terms and amount herein.  Nothing in this Agreement shall limit Plaintiff or Defendants from providing truthful information in response to an inquiry by any government agency or exercising any legal right that cannot be waived by private agreement.

8.      In the event either Plaintiff or Defendants breach any provision of this Agreement, Plaintiff and Defendants agree that either may institute an action against the other to specifically enforce any term or terms of this Agreement, in addition to any other legal or equitable relief permitted by law.  The prevailing party in any such action shall be entitled to reasonable attorneys' fees and costs.

9.      The parties agree that any action to enforce the terms of this Agreement shall be filed in the United States District Court, District of New Jersey.

10.     In the event that any provision of this Agreement is declared illegal or unenforceable by a court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void leaving the remainder of this Agreement in full force and effect.  Moreover, if any such provision is determined to be invalid, illegal or unenforceable and can be made valid, legal or enforceable by modification thereof, then the party for whose benefit the provision exists may make such modification as necessary to make the provision valid, legal and enforceable.

8

11.    In exchange for the promises made by Plaintiff and execution of this Agreement, Defendant agrees to pay the sum of Twelve Thousand Five Hundred and Zero/100 ($12,500) as set forth in this paragraph, in full satisfaction of all claims for compensatory and punitive damages or attorneys' fees and disbursements, known or unknown, asserted or unasserted including, but not limited to, claims for liquidated damages, legal or equitable relief, reinstatement, back or front pay, lost benefits, statutory claims, common law claims, contract claims (express, written or implied), and costs of this action.

12.    The sum referred to in paragraph 9 shall be paid within thirty (30) days after the date of Defendants' counsel's receipt of (1) Plaintiff's fully executed final Agreement, (2) a signed stipulation of dismissal of the Litigation with prejudice, and (3) a satisfactory and clear statutorily required child support search (Charles Jones/Signature Solutions is acceptable) to ensure there are no outstanding child support or other financial obligations, and only then will Defendants submit payment in sum of Twelve Thousand Five Hundred Dollars and zero/100 ($12,500), as follows:

a) A check in the amount of $8,333.34 (Eight Thousand Three Hundred Thirty-Three Dollars and Thirty-Four Cents), less lawful payroll tax deductions, including applicable state and federal income taxes made payable to "DEIVID DARIO VELEZ OVIEDO." Defendants will cause to be issued an IRS Form(s) W-2 regarding such payment.

b) A check in the amount of $4,166.66 (Four Thousand One Hundred Sixty-Six Dollars and Sixty-Six Cents), representing payment for attorneys' fees, made out to Jacob Aronauer, Esq. Defendants will cause to be issued an IRS Form 1099 regarding such

9

payment to Aronauer and Plaintiff Oviedo

13.    Defendants' counsel will hold the stipulation of dismissal in escrow until the payment has been made as set forth in paragraph 12.

14.    This Agreement sets forth the entire agreement between Plaintiff and Released Parties hereto, and fully supersedes any prior or contemporaneous agreements or understandings between Plaintiff and Released Parties.  Plaintiff also acknowledges that he has not relied on any representation, promises, or agreements of any kind made in connection with the decision to sign this Agreement, except for those set forth in this Agreement.

15.    Plaintiff DEIVID DARIO VELEZ OVIEDO affirms that as of the date Plaintiff signs this Agreement, he is not Medicare eligible (i.e., is not is not 65 years of age or older; is not suffering from end stage renal failure; and has not received Social Security Disability Insurance benefits for 24 months or longer, etc.).  Nonetheless, if the Centers for Medicare & Medicaid Services (CMS) (this term includes any related agency representing Medicare's interests) determines that Medicare has an interest in the payment to Plaintiff under this settlement, Plaintiff agrees to indemnify, defend and hold Released Parties harmless from any action by CMS relating to medical expenses of him.  Plaintiff agrees to reasonably cooperate with Released Parties upon request with respect to any claim that the CMS may make and for which Plaintiff is required to indemnify Released Parties under this paragraph.  Further, Plaintiff agrees to waive any and all future actions against Released Parties for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).

    a)  DEIVID DARIO VELEZ OVIEDO, represents that he received no medical or

10

other care that was paid by Medicare as a consequence of any action or omission by defendants, that there is no Medicare lien, and that he will hold Defendants and their insurer, Utica Mutual Insurance Company harmless for any claim or lien asserted by Medicare.  OVIEDO and his attorney are in the best position to determine if any reimbursement obligation exists, based on Plaintiff's entitlements (or lack thereof) to Medicare Program benefits and Plaintiff's actual receipt of such benefits. If there is a reimbursement obligation, Plaintiff and his attorney are to ensure that the Medicare Program's interests are properly considered and discharged. If there is a reimbursement obligation to the Medicare Program, Plaintiff and his attorney are responsible under the Medicare Secondary Payer Act to verify, resolve, and satisfy any such obligations. If Plaintiff is now or in the past has been enrolled in the Medicare Program, Plaintiff will report the settlement to CMS pursuant to the MSP Act and regulations, even if Plaintiff does not agree that the evidence actually establishes liability for injuries allegedly sustained by Plaintiff or that there is any requirement to report the settlement to the CMS.

16.    Plaintiff DEIVID DARIO VELEZ OVIEDO and his attorney, The Law Offices of Jacob Aronauer agree to hold Defendants harmless for any and all liens or claims, and the costs of defending any asserted liens or claims, against the settlement sums by any person or entity.

17.    This Agreement may not be modified except upon express written consent of all

11

Parties wherein specific reference is made to this Agreement.

18.     Plaintiff acknowledges and agrees that he has been given a reasonable period of time to consider the terms of this Agreement.  Plaintiff has reviewed the terms of this Agreement and the effect of signing this Agreement with legal counsel of Plaintiff's choosing. Plaintiff understands and agrees that this Agreement settles, bars and waives any and all claims that Plaintiff, his heirs, executors, administrators, fiduciaries, successors and/or assigns has or could possibly have against Released Parties as of the date of the execution of this Agreement.

19.     This Agreement shall be governed and conformed in accordance with the laws of the State of New Jersey without regard to its conflict of laws provisions.

20.     This Agreement may be executed in multiple counterparts. A facsimile or electronic signature (including a signature transmitted as a .tif or .pdf image) shall be sufficient to bind the signing party.

**PLAINTIFF IS ADVISED THAT HE HAS HAD A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT.**

**PLAINTIFF FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS PLAINTIFF HAVE OR MIGHT HAVE AGAINST RELEASED PARTIES.**

IN WITNESS WHEREOF, Plaintiff and Defendants hereto knowingly and voluntarily executed this Agreement as of the date set forth below:

PLAINTIFF DEIVID DARIO VELEZ OVIEDO

12

Dated:                          BY:_____

                                DEFENDANT ALEXANDER RODRIGUEZ


Dated:                          BY:_____


                                ON BEHALF OF DEFENDANT VILLAGE AUTO
                                WASH, LLC


Dated:                          BY:_____

13

# EXHIBIT B

 Gmail

Jacob Aronauer <jaronauer@aronauerlaw.com>

---

Oviedo v. VAW
4 messages

---

**Jamison M. Mark, Esq** <jmark@newjerseyattorneys.com>                    Thu, May 14, 2020 at 5:51 PM
To: Jacob Aronauer <jaronauer@aronauerlaw.com>

Jacob,

Let me know if you're free tomorrow to continue discussions.

*Jamison M. Mark, Esq.*

**THE MARK LAW FIRM, LLC**
**675 Morris Avenue, Suite 102**
**Springfield, New Jersey 07081**
**T: 973-845-6606 (main)**
**T: 908-626-1001**

**www.NewJerseyAttorneys.com**

Subscribe to our Mark Law Firm Instagram, Twitter, Youtube, LinkedIn and Facebook pages.

**EMAIL ADDRESSED TO THIS ACCOUNT IS NOT RECEIVED OR REVIEWED IN "REAL TIME" AND MUST NOT BE RELIED UPON FOR URGENT OR TIME SENSITIVE MESSAGES.**

This e-mail, plus any attachment, is intended only for the exclusive use of the person to whom it is addressed. The information contained herein is confidential, privileged and exempt from disclosure under applicable law. If the reader of this e-mail is neither the intended recipient nor an agent responsible for delivering the message to the intended recipient, be advised that any use, copying, dissemination, or distribution hereof is strictly prohibited. If this communication was received in error, please immediately notify the sender by telephone or e-mail and delete all copies of this e-mail and any attachment.

---

**Jacob Aronauer** <jaronauer@aronauerlaw.com>                    Thu, May 14, 2020 at 5:53 PM
To: "Jamison M. Mark, Esq" <jmark@newjerseyattorneys.com>

I think I would prefer to talk via e-mail

_____
Jacob Aronauer, Esq.
The Law Offices of Jacob Aronauer
225 Broadway, 3rd Floor
New York, New York 10007
(P) (212) 323-6980
(F) (212) 233-9238

107 Avenue I
Brooklyn, NY 11230
(P) (212) 323-6980

906 South Street

Peekskill, New York 10566
(P) (212) 323-6980

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this document (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

To reply to our email administrator directly, please send an email to jaronauer@aronauerlaw.com.

The Law Offices of Jacob Aronauer

[Quoted text hidden]

---

**Jamison Mark** <jmark@newjerseyattorneys.com>                                        Sun, May 17, 2020 at 2:50 PM
To: Jacob Aronauer <jaronauer@aronauerlaw.com>

Jacob,

I thought it would be easier to just send to you the release. I am attaching a redlined version of the agreement as Judge Hammer instructed. Please review and let me know if your client is agreeable. This would be version 7 of the agreement for consideration.

As requested, Ms. Rodriguez has increased the offer to $15k.

I have reduced the liquidated damages portion to 35% for breach.

I have added that payment will be made as a 1099. Due to wanting taxes taken our before, it caused a big delay in trying to figure out who to open the company back up and issue a payroll check, so this makes the payment easier for all. I have also instructed to have my client provide to you 3 checks at once, in the amount listed so there should be no issues with timely payment.

Once we have an agreement, I think we will need to put this on the record with the Judge. I assume you agree.

Be well,

Jamison

[Quoted text hidden]

**Oviedo v. VAW - FLSA Release (Final v.3).doc**
79K

---

**Jacob Aronauer** <jaronauer@aronauerlaw.com>                    Sun, May 17, 2020 at 2:55 PM
To: Jamison Mark <jmark@newjerseyattorneys.com>

I specifically told Judge Hammer we did not have a deal.  The bottom line is $19,500.  Period.  No liquidated damages provision for a breach.  Take it or leave it.

---

Jacob Aronauer, Esq.
The Law Offices of Jacob Aronauer
225 Broadway, 3rd Floor
New York, New York 10007
(P) (212) 323-6980
(F) (212) 233-9238

107 Avenue I
Brooklyn, NY 11230
(P) (212) 323-6980

906 South Street
Peekskill, New York 10566
(P) (212) 323-6980

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this document (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the intended recipient(s).  Any review, use, distribution or disclosure by others is strictly prohibited.  If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

To reply to our email administrator directly, please send an email to jaronauer@aronauerlaw.com.

The Law Offices of Jacob Aronauer

[Quoted text hidden]